**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
CASE NO. 1:18-cv-01373-WCG

DAVID VAN ELZEN, individually and on behalf                    **CLASS ACTION**
of all others similarly situated,

     *Plaintiff,*

vs.

EDUCATOR GROUP PLANS,
INSURANCE SERVICES, INC. and
EQUITA FINANCIAL AND INSURANCE
SERVICES OF TEXAS, INC. d/b/a THE
EQUITA GROUP, Texas corporations,

     *Defendants.*

---

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

     Plaintiff David Van Elzen, on behalf of himself and classes of similarly situated persons,

with the consent of Defendants Educator Group Plans, Insurance Services, Inc. d/b/a/ Equita Final

Expense Services and Equita Financial and Insurance Services of Texas, Inc. d/b/a The Equita

Group (jointly referred to as "The Equita Group" or "Defendants"), respectfully requests the entry

of an order granting preliminary approval of the class action settlement set forth in the Parties'

Settlement Agreement ("Settlement Agreement" or "Agreement"), certifying a class for settlement

purposes, and providing for issuance of Notice to the Settlement Class.[1]

---

[1] The Agreement is attached as *Exhibit A*. All capitalized terms used herein have the same
definitions as those defined in the Agreement.

1

# I.  INTRODUCTION

The Settlement Agreement makes $900,000.00 available to the settlement class, which will also be used to pay the Settlement Costs.  If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, contentious litigation centered on unsettled legal questions.

This motion seeks the entry of an order providing for, among other things:

1. Preliminary Approval of the Settlement;

2. Preliminary certification of a Settlement Class and appointment of the Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

3. Approval of the Settlement Administrator;

4. Approval of the Notice program describing:

    a. The Settlement and the Settlement Class members' rights with respect to the Settlement;

    b. The proposed Release of claims;

    c. Class Counsel's request for attorneys' fees and expenses, and a Service Award for the Class Representative; and

    d. The procedure for opting-out of or objecting to the Settlement

5. Approval of the Claims process; and

6. The scheduling of a Final Approval Hearing to consider Final Approval of the Settlement.

The Parties' proposed Settlement is exceedingly fair and well within the range of Preliminary Approval for several reasons. *See* Declaration of Avi Kaufman ¶ 2, attached hereto as *Exhibit B*.  First, it provides relief for Settlement Class Members where their recovery, if any,

2

would otherwise be uncertain, especially given Defendants' ability and willingness to continue its vigorous defense of the case. Second, the Settlement was reached only after first engaging in extensive pre-litigation discovery, formal discovery, and extensive arm's-length negotiations. Third, the Settlement was not conditioned on any amount of attorneys' fees for Class Counsel or Service Award for Plaintiff, which speaks to the fundamental fairness of the process. Kaufman Decl. ¶ 3.

For all these reasons, and as further described below, Plaintiff respectfully requests that the Court preliminarily approve the Settlement.

## II.   BACKGROUND

### a.  Facts

The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…."[2] Plaintiff initiated this litigation against the Defendants alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and seeking, *inter alia*, monetary damages.

### b.  Procedural History

On September 5, 2018, Plaintiff filed the Complaint against Educator Group Plans, Insurance Services, Inc. in this action. [DE #1].  On October 17, 2018, Educator Group Plans, Insurance Services, Inc. filed a Motion to Dismiss. [DE #8].  On November 8, 2018, Plaintiff filed an Amended Complaint adding Equita Financial and Insurance Services of Texas, Inc. as a Defendant.  [DE #9].  On November 21, 2018, The Equita Group filed a Motion to Dismiss directed

---

[2]  Federal Communications Commission, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

3

towards the Amended Complaint. [DE #11]. Between November 21, 2018 and November 28, 2018, the parties engaged in a meet and confer regarding The Equita Group's Motion to Dismiss directed towards the Amended Complaint, resulting in The Equita Group's withdrawal of the Motion to Dismiss directed towards the Amended Complaint. See [DE #15]. On December 5, 2018, The Equita Group filed their Answer and Affirmative Defenses to the Amended Complaint. [DE #12]. On January 16, 2019, the Court entered a Scheduling Order. [DE #17]. Discovery commenced in December 2018. Class Counsel served written discovery, documents requests, and a deposition notice on The Equita Group and multiple waves of subpoenas for documents and depositions on various third parties that supplied mobile marketing software to The Equita Group. Class Counsel also engaged in extensive informal discovery and formal discovery relating to the potential loss of relevant data during the pendency of litigation.

Based on the Parties' grasp of the relative strengths and weaknesses of their cases through discovery, in mid-April 2019, the Parties began to engage in formal class wide settlement discussions, resulting in an agreement in principle to settle the Action on May 6, 2019. The Parties engaged in intensive arm's-length negotiations to resolve the Case with a view toward achieving substantial benefits for the Settlement Class as a whole, while avoiding the cost, delay, and uncertainty of further litigation, trial, and appellate practice.

### III. SUMMARY OF THE SETTLEMENT TERMS

The following is a summary of the material terms of the Settlement.

#### a. The Settlement Class

The proposed Settlement establishes a Settlement Class of all members of the classes of persons in this Action, consisting of approximately 4,000 potential Settlement Class Members, as follows:

> All persons in the United States who had one or more The Equita Group Prerecorded Message and/or The Equita Group Text Message sent to their cellular telephone number.

Agreement Section III. Excluded from the Settlement Class are: (1) the trial judge presiding over this case; (2) The Equita Group, as well as any parent, subsidiary, affiliate or control person of The Equita Group, and the officers, directors, agents, servants or employees of The Equita Group; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any individual in the Settlement Class who has timely opted out of this proceeding; and (6) Plaintiff's Counsel and their employees.

### b. **Settlement Consideration**

Pursuant to the Settlement, the total cash consideration to be provided by The Equita Group to Settlement Class Members pursuant to the Settlement shall be $900,000.00 ("Settlement Fund").

### c. **Notice Administrator and Settlement Administrator**

Pending this Court's approval, Angeion Group will serve as the Settlement Administrator and as Notice Administrator. The Notice Administrator and Settlement Administrator's responsibilities may include: i. obtaining from Class Counsel and The Equita Group cellular telephone information, and to the extent it is available, name, email, and address information, for the Settlement Class Members; ii. performing reverse telephone number look-ups by cellular telephone number to determine available associated physical addresses that might exist for any Settlement Class Members for whom the Parties do not have email addresses, and verifying and updating the addresses received through the National Change of Address database, for the purpose of providing Mailed Notice; iii. providing Mailed Notice; iv. providing Email Notice (to the extent reasonably ascertainable); v. providing Long Form Notice Settlement Class Member; vi. establishing and maintaining the Settlement Website; vii. establishing and maintaining a post office box for requests for exclusion from the Settlement Class; viii. providing weekly reports

5

about the Notice Plan and number and identity of opt-outs (if any) to Class Counsel and The Equita Group's counsel; ix. responding to any Settlement Class Member inquiries; x. processing all requests for exclusion from the Settlement Class; xi. at Class Counsel's request in advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that identifies each Settlement Class Member who timely and properly requested exclusion from the Settlement Class; xii. performing the duties of Escrow Agent as described in this Agreement, and any other Settlement-administration-related function at the instruction of Class Counsel and The Equita Group, including, but not limited to, verifying that Settlement Funds have been distributed as required; xiii. distributing Settlement Fund Payments; xiv. in repaying to The Equita Group remaining funds in the Settlement Fund in the event funds remain in the Settlement Fund after distribution of Settlement Fund Payments or in the event of a termination of the Settlement pursuant to the Agreement; and xv. performing the duties of Tax Administrator described in the Agreement, and any other Settlement-administration and tax-related function at the instruction of Class Counsel and The Equita Group.  Agreement at Section VI.

### d.  **The Notice Program**

The Notice Administrator will be responsible for administrating the Notice Program. The Notice Program consists of three different components: (1) E-mail Notice (provided addresses are reasonably ascertainable); (2) Mailed Notice and (2) Long-Form Notice. Agreement at ¶54. The forms of the proposed E-mail Notice, Mailed Notice, and Long-Form Notice agreed upon by Class Counsel and Defendants, subject to this Court's approval and/or modification, are attached to the Settlement Agreement as Exhibits.

The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms

of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application and/or the request for a Service Award; the date of the Final Approval Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement, and other important documents. The Notice Program here is straightforward, easy to understand for Settlement Class Members, and designed to inform members of their rights under the Agreement. Kaufman Decl. ¶ 4.

The Settlement Administrator shall perform reverse telephone number look ups, shall run addresses through the National Change of Address Database, and shall mail to all Settlement Class Members for whom the Parties do not have email addresses postcards that contain details about the Settlement ("Initial Mailed Notice").

The Settlement Administrator shall perform reasonable address traces for all Initial Mailed Notice postcards that are returned as undeliverable. By way of example, a "reasonable" tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. The Settlement Administrator shall complete the re-mailing of Mailed Notice postcards to those Settlement Class Members whose new addresses were identified as of that time through address traces ("Notice Re-mailing Process"). The Settlement Administrator's continued efforts in connection with the Notice Re-mailing Process shall not affect or extend any Settlement Class Member's deadlines for objecting or opting out.

The Mailed Notice Program (which is composed of both the Initial Mailed Notice and the Notice Re-mailing Process) shall be completed no later than 45 days before the Final Approval Hearing. The Settlement Administrator shall provide Class Counsel and The Equita Group an affidavit that confirms that the Mailed Notice Program was completed in a timely manner. Class

Counsel shall file that affidavit with the Court as an exhibit to or in conjunction with Plaintiff's motion for Final Approval of the Settlement.

The Notice Administrator shall administer the Email Notice Program, which shall consist of an email containing the Email Notice sent to all Settlement Class Members for whom the Parties have email information. The Email Notice Program shall be completed no later than 70 days before the Final Approval Hearing. The Notice Administrator shall provide Class Counsel and The Equita Group with an affidavit that confirms that Email Notice was given in accordance with the Email Notice Program. Class Counsel shall file that affidavit with the Court as an exhibit to or in conjunction with Plaintiff's motion for Final Approval of the Settlement.

### e.  Opt-Out and Objection Procedures

Settlement Class members who do not wish to participate in the Settlement may opt-out of the Settlement by sending a written request to the Settlement Administrator at the address designated in the Notice. Settlement Class members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against Defendants, subject to any defenses that Defendants may have against those claims. The Settlement Agreement details the requirements to properly opt-out of the Settlement Class. A Settlement Class member must opt-out of the Settlement Class by the Opt-Out Period, which is 30 days prior to the Final Approval Hearing. The Settlement Administrator will communicate any opt-out requests to Class Counsel, who will in turn report them to the Court as part of the Final Approval Hearing and those names will be referenced in an exhibit to the Final Approval Order.

Settlement Class Members who wish to file an objection to the Settlement must do so no later than 30 days prior to the Final Approval Hearing. Pending Court approval, for an objection to be considered by the Court, it must include the following:

8

a.  the name of the Action;

b.  the objector's full name, address and telephone number;

c.  an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d.  all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel;

e.  the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

f.  the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

g.  a copy of any orders related to or ruling upon counsel's or the firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years;

h.  any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

i.  the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

j.  a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing;

k.  a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; and

l.  the objector's signature (an attorney's signature is not sufficient).

Agreement at ¶53.

### f.  Release of Claims

In exchange for the Settlement consideration, Plaintiff and all Settlement Class Members, agree to the release as defined in Section XII of the Agreement.

### g.  Calculation of Distribution from Settlement Fund

Each Settlement Class Member who does not timely and validly opt out shall automatically receive a cash distribution payable by check.  The amount of each cash distribution shall be determined by the following formula: Net Settlement Fund divided by the sum of the number of Settlement Class Members who had one or more The Equita Group Prerecorded Message sent to their cellular telephone number and the number of Settlement Class Members who had one or more The Equita Group Text Message sent to their cellular telephone number = Settlement Fund Payment.  Settlement Class Members that were sent either The Equita Group Prerecorded Message(s) or The Equita Group Text Message(s) shall receive one Settlement Fund Payment. Settlement Class Members that were sent both The Equita Group Prerecorded Message(s) and The Equita Group Text Message(s) shall receive two Settlement Fund Payments.

### h.  Distribution of Settlement Funds

The Settlement Administrator shall distribute the funds in the Settlement Fund in the following order and within the time period set forth with respect to each such payment: First, no later than 5

10

days after Final Approval, the Settlement Administrator shall pay to Plaintiff any Service Award

and to Class Counsel any attorneys' fees and costs ordered by the Court. Next, no later than 45

days following the Effective Date, the Settlement Class Members shall be sent their Settlement

Fund Payments by mail. Each Settlement Fund Payment will be negotiable for 180 days after it is

issued. Finally, for any Settlement Fund Payments that are returned or not redeemed within 180

days after issuance, the Settlement Administrator shall attempt to obtain a new mailing address for

that Settlement Class Member. If after a second mailing, the Settlement Fund Payment is again

returned, no further efforts need be taken by the Settlement Administrator to resend the check.

Any Settlement Fund Payments that are returned or not redeemed within 180 days after issuance

shall be returned to The Equita Group.

### i. Class Counsel Fees and Expenses and Plaintiff's Service Award

Defendants have agreed not to oppose Class Counsel's request for attorneys' fees and

expenses of up to one-third of the Settlement Fund. Defendants have also agreed not to oppose an

application for a Service Award for the Plaintiff up to $5,000.00. Agreement at Section XIII. The

Court should consider whether to grant or deny these awards separate and apart from its

consideration of the fairness and reasonableness of the Settlement.

## IV. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### a. The Legal Standard for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may

be dismissed or compromised, notice must be given in the manner directed by the court, and

judicial approval must be obtained. Fed. R. Civ. P. 23(e). As a matter of public policy, courts

favor settlement of class actions for their earlier resolution of complex claims and issues, which

promotes the efficient use of judicial and private resources. *EEOC v. Hiram Walker & Sons, Inc.*,

11

768 F.2d 884, 888 (7th Cir. 1985). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *see also 4 Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Approval of a class action settlement is a two-step process. Preliminary approval is the first step, requiring the Court to make a preliminary determination that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *George v. CNH Health & Welfare Ben. Plan*, No. 16-CV-1678-JPS, 2017 U.S. Dist. LEXIS 152904, at *1 (E.D. Wis. Sep. 20, 2017) (quoting *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002)).

At the preliminary approval stage, the Court's task is to determine whether the proposed settlement is "within the range of possible approval" to warrant sending notice to class members and proceed to a fairness hearing. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2016) ("Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there is 'probable cause' to submit the [settlement] to class members and [to] hold a full-scale hearing as to its fairness."). In the second step, after notice to settlement class members and time and opportunity for them to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable under Rule 23. *Id*.

The Court should take the first step in the process and grant Preliminary Approval of the Settlement. The Settlement is clearly within the range of reasonableness and satisfies all standards for Preliminary Approval.

### b. <u>The Settlement Satisfies the Criteria for Preliminary Approval</u>

Each of the relevant factors weighs heavily in favor of Preliminary Approval of this Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed, and arm's length negotiations by competent counsel. Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that Preliminary Approval is appropriate. Kaufman Decl. ¶ 5.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiff and Class Counsel believe that the claims asserted are meritorious and that Plaintiff would prevail if this matter proceeded to trial. Defendants argue that Plaintiff's claims are unfounded, deny any liability, and have shown a willingness to litigate vigorously. Kaufman Decl. ¶ 6.

The Parties concluded that the benefits of the Settlement outweigh the risks and uncertainties attendant to continued litigation that include, but are not limited to, the risks, time and expenses associated with completing trial and any appellate review. Kaufman Decl. ¶ 7.

### c. <u>The Settlement Agreement is the Product of Good Faith, Informed and Arm's Length Negotiations</u>

There is a "strong initial presumption of fairness" when a proposed settlement is "the result of arm's length negotiations" and plaintiff's counsel is experienced and has engaged in adequate discovery. *Hispanics United v. Village of Addison,* 988 F. Supp. 1130, 1150 n.6 (N.D. Ill. 1997);

13

*see also Ross v. A.H. Robins Co.*, 700 F. Supp. 682, 683 (S.D.N.Y. 1988) ("A strong initial presumption exists in favor of a proposed settlement where the proponents establish that: (i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; (iii) there has been sufficient discovery to enable counsel to act intelligently; and (iv) the number of objectants or their relative interest is small.").

The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. Kaufman Decl. ¶ 8. Furthermore, Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. Kaufman Decl. ¶ 9 and Exhibit 1. Class Counsel zealously represented their client throughout the litigation, and throughout the discovery process, which included review of numerous pages of documents and electronic data, and third party discovery. Kaufman Decl. ¶ 10.

In negotiating this Settlement, Class Counsel had the benefit of years of experience in litigating and settling complex class actions and a familiarity with the facts of the Action. Kaufman Decl. ¶ 9 and Exhibit 1 thereto. As detailed above, Class Counsel conducted a thorough analysis of Plaintiff's claims and engaged in extensive informal and formal discovery with Defendants and third parties. *Id*. ¶ 11. Class Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in the Action and prepared them for well-informed settlement negotiations.

### d.  <u>The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate and Reasonable</u>

The Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy and reasonableness of the Settlement is warranted.

14

### i.   <u>Likelihood of Success at Trial</u>

Class Counsel are confident in the strength of Plaintiff's case, but are also pragmatic in their awareness of the various defenses available to Defendants, and the risks inherent in trial and post-judgment appeal. Kaufman Decl. ¶ 12. The success of Plaintiff's claims turn on questions that would arise at summary judgment, trial and during an inevitable post-judgment appeal. Further, it remains unclear whether Plaintiff would be able to certify a class for resolution of the asserted claims at trial. Under the circumstances, Class Counsel appropriately determined that the Settlement outweighs the risks of continued litigation. Kaufman Decl. ¶ 13.

Even if Plaintiff and the Settlement Class prevailed at trial, any recovery could be delayed for years by an appeal. This Settlement provides substantial relief to Settlement Class Members, without further delay.

### ii.   <u>Range of Possible Recovery and the Point On or Below the Range of Recovery at Which a Settlement is Fair</u>

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. Courts recognize that the "essence of settlement is compromise," and a settlement need not represent a complete victory for the plaintiffs for it to be approved. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (quoting *Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 315 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)). "[T]he court is not called upon to determine whether the settlement reached by the parties

15

is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted). Rather, the settlement must be lawful, fair, reasonable, and adequate.

The $900,000.00 made available to the class here is more than reasonable, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of settlement including, but not limited to, a motion for class certification, a motion for summary judgment, *Daubert* motions, trial as well as appellate review following a final judgment.

There can be no doubt that this Settlement is a fair and reasonable recovery in light of Defendants' defenses, the uncertainty of class certification, and the challenging and unpredictable path of litigation Plaintiff and all Settlement Class Members would face absent a settlement. Kaufman Decl. ¶ 14.

### iii. Complexity, Expense and Duration of Litigation

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner. Kaufman Decl. ¶ 15.

### iv. Stage of Proceedings

The Settlement was reached only after extensive informal and formal discovery was taken from Defendants and third parties. As a result, Class Counsel were extremely well-positioned to confidently evaluate the strengths and weaknesses of Plaintiff's claims and prospects for success at trial and on appeal. Kaufman Decl. ¶ 16.

16

### e. __Certification of the Settlement Class is Appropriate__

For settlement purposes, Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class defined in paragraph 45 of the Agreement. "Federal Rule of Civil Procedure 23 allows a court to certify a class conditionally or provisionally, for purposes of effectuating a settlement." *Baumann Farms, Ltd. Liab. P'ship v. Yin Wall City, Inc.*, No. 16-CV-605, 2018 U.S. Dist. LEXIS 156735, at *2 (E.D. Wis. Sep. 14, 2018). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification of the proposed Settlement Class will allow notice of the Settlement to issue to inform Settlement Class Members of the existence and terms of the Settlement, of their right to object and be heard on its fairness, of their right to opt-out, and of the date, time and place of the Final Approval Hearing. *See Manual for Compl. Lit.*, at §§ 21.632, 21.633. For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Case 1:18-cv-01373-WCG    Filed 05/24/19    Page 17 of 22    Document 21

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 4,000 potential Settlement Class Members, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *see, e.g.*, *Swanson v. Am. Consumer Indus., Inc.,* 415 F.2d 1326, 1333 n.9 (7th Cir. 1969*)*.

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact – centering on Defendants' telemarketing program – that are common to the Settlement Class, that are alleged to have injured all Settlement Class Members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality. We have previously stated that a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."") (quoting *De La Fuente v. Stokley-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983)). Plaintiff is typical of the Settlement Class Members because he received prerecorded voice calls and text messages from The Equita Group and claims to have suffered the same injuries, and because they will all benefit from the relief provided by the Settlement.

18

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) requires (1) a plaintiff's attorney to be qualified, experienced, and generally able to conduct the proposed litigation; and (2) a plaintiff must not have interests antagonistic to those of the class. *Wood v. Capital One Auto Fin., Inc.*, No. 06-CV-7, 2006 U.S. Dist. LEXIS 67513, at *8 (E.D. Wis. Sep. 19, 2006); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1080-81 (7th Cir. 2013). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions. Class Counsel devoted substantial time and resources to vigorous litigation of the Action. Kaufman Decl. ¶ 9 and Exhibit 1 thereto.

Rule 23(b)(3) requires that "common issues of fact and law predominate in particular when adjudication of questions of liability common to the class will achieve economies of time and expense." *Chi. Teachers Union, Loc. No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 444 (7th Cir. 2015). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

**f.  The Court Should Approve the Proposed Notice Program**

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit*. § 21.312 (internal quotation marks omitted).  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950); *see also Gerlach v. W. Rev. Generation Servs., LLC*, No. 1:18-cv-00170 WCG, 2019 U.S. Dist. LEXIS 977, at *3 (E.D. Wis. Jan. 3, 2019) (describing provisions included in adequate notice); Manual for Compl. Lit., § 21.312 (listing relevant information).

The Notice program satisfies these criteria. As recited in the Settlement and above, the Notice Program will inform Settlement Class members of the substantive terms of the Settlement. It will advise Settlement Class Members of their options for remaining part of the Settlement Class, for objecting to the Settlement, Class Counsel's attorneys' fee application and/or request for Service Award, or for opting-out of the Settlement, and how to obtain additional information about the Settlement. The Notice Program is designed to reach a high percentage of Settlement Class members and exceeds the requirements of Constitutional Due Process. Therefore, the Court should approve the Notice Program and the form and content of the Notices.

**V.  Proposed Schedule of Events**

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the

20

Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered.

Class Counsel propose the following schedule:

| Event | Date |
|---|---|
| Deadline for Completion of Mailed Notice Program (includes Initial Mailed Notice and Notice Re-mailing Process) | 45 days prior to the Final Approval Hearing |
| Deadline for the Email Notice Program | 70 days prior to the Final Approval Hearing |
| Deadline for filing papers in support of Final Approval of the Settlement and Class Counsel's application for an award of attorneys' fees and expenses | 45 days prior to the Final Approval Hearing |
| Deadline for opting-out of Settlement and submission of objections | 30 days prior to the Final Approval Hearing |
| Responses to Objections | 15 days prior to the Final Approval Hearing |
| The Final Approval Hearing | Approximately 120 days after Preliminary Approval |
| Settlement Class Members shall be sent their Settlement Fund Payments by mail | 45 days after the Effective Date, as defined at ¶18 of the Agreement |

## VI.  Conclusion

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) approve the Notice program set forth in the Agreement and approve the form and content of the Notices and Claim Form, attached to the Settlement Agreement; (4) approve and order the opt-out and objection procedures set forth in the Agreement; (5) appoint Plaintiff as Class Representative;

21

(6) appoint as Class Counsel the law firms and attorneys listed in paragraph I of the Agreement;

and (7) schedule a Final Approval Hearing approximately 120 days after Preliminary Approval. A

Proposed Preliminary Approval Order is attached hereto as *Exhibit C*.

<div style="margin-left: 40%;">

Respectfully submitted,

</div>

Dated: May 24, 2019          By: */s/ Avi R. Kaufman*
                  Avi R. Kaufman
                  kaufman@kaufmanpa.com
                  KAUFMAN P.A.
                  400 NW 26th Street
                  Miami, FL 33127
                  Telephone: (305) 469-5881

                  Stefan Coleman
                  law@stefancoleman.com
                  LAW OFFICES OF STEFAN COLEMAN, P.A.
                  201 S. Biscayne Blvd, 28th Floor
                  Miami, Fl 33131
                   Telephone: (877) 333-9427
                  Facsimile: (888) 498-8946

                  *Counsel for Plaintiff and all others similarly situated*