**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
CASE NO. 1:18-cv-01373-WCG

DAVID VAN ELZEN, individually and on behalf            **CLASS ACTION**
of all others similarly situated,

     *Plaintiff,*

vs.

EDUCATOR GROUP PLANS,
INSURANCE SERVICES, INC. and
EQUITA FINANCIAL AND INSURANCE
SERVICES OF TEXAS, INC. d/b/a THE
EQUITA GROUP, Texas corporations,

     *Defendants.*

_____

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**SETTLEMENT AND APPLICATION FOR SERVICE AWARD AND ATTORNEYS'**
**FEES AND EXPENSES, AND INCORPORATED MEMORANDUM OF LAW**

     Plaintiff David Van Elzen, on behalf of himself and classes of similarly situated persons,

with the consent of Defendants Educator Group Plans, Insurance Services, Inc. d/b/a/ Equita

Final Expense Services and Equita Financial and Insurance Services of Texas, Inc. d/b/a The

Equita Group (jointly referred to as "The Equita Group" or "Defendants"), respectfully requests

the entry of an order granting final approval of the class action settlement set forth in the Parties'

Settlement Agreement.[1]  The parties request entry of the agreed proposed order filed herewith,

attached as Exhibit B to this Motion, at or after the fairness hearing scheduled for October 2,

2019.  Plaintiff and Class Counsel respectfully request that the Court: (1) grant Final Approval to

_____

[1] The Agreement is attached as *Exhibit A*. All capitalized terms used herein have the same
definitions as those defined in the Agreement.

1

the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure; (3) appoint as Class Representative the Plaintiff; (4) appoint as Class Counsel and Settlement Class Counsel the law firms and attorneys as set forth in the Amended Preliminary Approval Order (D.E. 23); (5) approve the Service Award to the Plaintiff; (6) award Class Counsel attorneys' fees and reimbursement of certain expenses pursuant to Rule 23(h) of the Federal Rules of Civil Procedure; and (7) enter Final Judgment dismissing the Action with prejudice.

## I. __INTRODUCTION__

Plaintiff David Van Elzen sued Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), claiming that Defendants made unsolicited, prerecorded calls and sent unauthorized text messages to consumers. The parties negotiated a settlement on behalf of Plaintiff and a class of approximately 4,000 consumers. On May 30, 2019, the Court granted Preliminary Approval to the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of a motion for Final Approval.

Plaintiff and Class Counsel now seek Final Approval of the Settlement. Based on the controlling legal standards and supporting facts, Final Approval is clearly warranted. In addition, Class Counsel respectfully request that the Court award a Service Award to the Class Representative, whose willingness to represent the Settlement Class and participation in the Action helped make the Settlement possible. Finally, Class Counsel respectfully request that the Court award attorneys' fees and reimbursement of expenses incurred in prosecuting the Action and in connection with the Settlement in an amount equal to one third of the Settlement Fund to compensate for the work in achieving the Settlement.

## II.    PROCEDURAL HISTORY

On September 5, 2018, Plaintiff filed the Complaint against Educator Group Plans, Insurance Services, Inc. in this action. [DE #1].  On October 17, 2018, Educator Group Plans, Insurance Services, Inc. filed a Motion to Dismiss. [DE #8].  On November 8, 2018, Plaintiff filed an Amended Complaint adding Equita Financial and Insurance Services of Texas, Inc. as a Defendant.  [DE #9].  On November 21, 2018, The Equita Group filed a Motion to Dismiss directed towards the Amended Complaint.  [DE #11].  Between November 21, 2018 and November 28, 2018, the parties engaged in a meet and confer regarding The Equita Group's Motion to Dismiss directed towards the Amended Complaint, resulting in The Equita Group's withdrawal of the Motion to Dismiss directed towards the Amended Complaint.  See [DE #15]. On December 5, 2018, The Equita Group filed their Answer and Affirmative Defenses to the Amended Complaint.  [DE #12].  On January 16, 2019, the Court entered a Scheduling Order. [DE #17].  Discovery commenced in December 2018.  Class Counsel served waves of written discovery and a deposition notice on The Equita Group and multiple waves of subpoenas for documents and depositions on various third parties that supplied marketing software and services to The Equita Group.  Class Counsel also engaged in extensive informal discovery and formal discovery relating to the potential loss of relevant data during the pendency of litigation.

Based on the Parties' grasp of the relative strengths and weaknesses of their cases through discovery, in mid-April 2019, the Parties began to engage in formal class wide settlement discussions, resulting in an agreement in principle to settle the Action on May 6, 2019.  The Parties engaged in intensive arm's-length negotiations to resolve the Case with a view toward achieving substantial benefits for the Settlement Class as a whole, while avoiding the cost, delay, and uncertainty of further litigation, trial, and appellate practice.

3

### III. **SUMMARY OF SETTLEMENT TERMS**

The Settlement terms are detailed in the Agreement attached. The following is a summary of its material terms.

#### a. **The Settlement Class**

The proposed Settlement establishes a Settlement Class of all members of the classes of persons in this Action, consisting of approximately 4,000 potential Settlement Class Members, as follows:

> All persons in the United States who had one or more The Equita Group Prerecorded Message and/or The Equita Group Text Message sent to their cellular telephone number.

Agreement Section III. Excluded from the Settlement Class are: (1) the trial judge presiding over this case; (2) The Equita Group, as well as any parent, subsidiary, affiliate or control person of The Equita Group, and the officers, directors, agents, servants or employees of The Equita Group; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any individual in the Settlement Class who has timely opted out of this proceeding; and (6) Plaintiff's Counsel and their employees.

#### b. **Settlement Consideration**

Pursuant to the Settlement, the total cash consideration to be provided by The Equita Group to Settlement Class Members pursuant to the Settlement shall be $900,000.00 ("Settlement Fund").

#### c. **The Notice Program**

The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Defendants had available about Settlement Class members. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Attorneys' Fee

4

application and request for Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. The Notices and Notice Program constitute sufficient notice to all persons entitled to notice, and satisfies all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

### d. Release of Claims

In exchange for the Settlement consideration, Plaintiff and all Settlement Class Members, agree to the release as defined in Section XII of the Agreement.

### e. Calculation of Distribution from Settlement Fund

Each Settlement Class Member who does not timely and validly opt out shall automatically receive a cash distribution payable by check. The amount of each cash distribution shall be determined by the following formula: Net Settlement Fund divided by the sum of the number of Settlement Class Members who had one or more The Equita Group Prerecorded Message sent to their cellular telephone number and the number of Settlement Class Members who had one or more The Equita Group Text Message sent to their cellular telephone number = Settlement Fund Payment. Settlement Class Members that were sent either The Equita Group Prerecorded Message(s) or The Equita Group Text Message(s) shall receive one Settlement Fund Payment. Settlement Class Members that were sent both The Equita Group Prerecorded Message(s) and The Equita Group Text Message(s) shall receive two Settlement Fund Payments.

### f. Distribution of Settlement Funds

No later than 45 days following the Effective Date, the Settlement Class Members shall be sent their Settlement Fund Payments by mail. Each Settlement Fund Payment will be negotiable for 180 days after it is issued. Finally, for any Settlement Fund Payments that are

returned or not redeemed within 180 days after issuance, the Settlement Administrator shall attempt to obtain a new mailing address for that Settlement Class Member. If after a second mailing, the Settlement Fund Payment is again returned, no further efforts need be taken by the Settlement Administrator to resend the check. Any Settlement Fund Payments that are returned or not redeemed within 180 days after issuance shall be returned to The Equita Group.

### g. Class Counsel Fees and Expenses and Plaintiff's Service Award

Defendants have agreed not to oppose Class Counsel's request for attorneys' fees of up to $300,000 and expenses. Defendants have also agreed not to oppose an application for a Service Award for the Plaintiff up to $5,000.00. Agreement at Section XIII. The Court should consider whether to grant or deny these awards separate and apart from its consideration of the fairness and reasonableness of the Settlement.

## IV. MOTION FOR FINAL APPROVAL

### a. The Court Should Grant Final Approval to the Settlement

Court approval is required for settlement of a class action. Fed. R. Civ. P. 23(e). The federal courts have long recognized a strong policy and presumption in favor of class settlements. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby*, 75 F.3d 1191, 1196.

Under Federal Rule of Civil Procedure 23(e), after a court directs notice in a "reasonable

6

manner to all class members who would be bound by the proposal," the court may issue final approval of the settlement "after a hearing and on finding that it is fair, reasonable, and adequate." The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

### i. Notice was the Best Practicable and was Reasonably Calculated to Inform the Settlement Class of its Rights

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit*. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also Manual for Compl. Lit.* § 21.312 (listing relevant information).

The Notice program satisfies these criteria. As recited in the Settlement, the Motion for Preliminary Approval and above, the Notice Program advised Settlement Class members of the substantive terms of the Settlement, their options for remaining part of the Settlement Class, for objecting to the Settlement, Class Counsel's Attorneys' fee application and request for Service Award, or for opting-out of the Settlement, and how to obtain additional information about the Settlement.

7

### ii. The Settlement Should Be Approved as Fair, Adequate and Reasonable

In deciding whether to approve the Settlement, the Court will analyze whether it is fair, adequate, reasonable. A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted). When considering whether to give final approval of a class action settlement, courts in the Seventh Circuit consider a number of factors, including: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *E.g. Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014). The analysis of these factors shows this Settlement to be eminently fair, adequate and reasonable.

As discussed above, the Settlement Agreement makes $900,000 available to the settlement class, less Settlement Costs. Class Counsel are confident in the strength of Plaintiff's case, but are also pragmatic in their awareness of the various defenses available to Defendants, and the risks inherent in trial and post-judgment appeal. The success of Plaintiff's claims turn on questions that would arise at summary judgment, trial and during an inevitable post-judgment

8

appeal. Further, it remains unclear whether Plaintiff would be able to certify a class for resolution of the asserted claims at trial. Even if Plaintiff and the Settlement Class prevailed at trial, any recovery could be delayed for years by an appeal. Under the circumstances, Class Counsel appropriately determined that the Settlement outweighs the risks of continued litigation. This Settlement provides substantial relief to Settlement Class Members, without further delay. In addition to the risk of losing on the merits, continued litigation would have been costly and time-consuming for the parties, counsel, and the Court. This settlement eliminates these costs and risks and provides an excellent result, warranting final approval.

This Settlement was in no way the result of collusion. The contested nature of the proceedings in this Action demonstrates the absence of fraud or collusion behind the Settlement. *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (noting that the court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties"). The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. Furthermore, Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases.

As further support for final approval, the Settlement website has been live since July 23, 2019, the Email Notice Program was completed on July 24, 2019 and the Mailed Notice Program was completed on the day of this filing. To date, there have been no objections to or opt-outs of the Settlement.

Finally, settlement was reached only after extensive informal and formal discovery was taken from Defendants and third parties—including extensive discovery related to the potential

9

loss of relevant data during the pendency of litigation. As a result, Class Counsel were extremely well-positioned to confidently evaluate the strengths and weaknesses of Plaintiff's claims and prospects for success at trial and on appeal. Class Counsel is confident that the settlement achieved is a fair and adequate conclusion to this litigation. Declaration of Avi R. Kaufman, attached hereto as Exhibit C, at ¶¶ 2-7.

Because the settlement provides a significant benefit to the Settlement Class and is reasonable, fair and adequate, final approval is appropriate.

### b.   **The Court Should Certify the Settlement Class**

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the class members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and adjudication of the controversy. For the purpose of considering a settlement, all of the factors are satisfied.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 4,000 individuals, and joinder of all such persons is impracticable. *See*

Fed. R. Civ. P. 23(a)(1); *see, e.g., Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969).

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact – centering on Defendant's telemarketing program – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality. We have previously stated that a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'") (quoting *De La Fuente v. Stokley-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983)). Plaintiff is typical of the Settlement Class Members because he received prerecorded voice calls and text messages from The Equita Group and claims to have suffered the same injuries, and because they will all benefit from the relief provided by the Settlement.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) requires (1) a plaintiff's attorney to be qualified, experienced, and

generally able to conduct the proposed litigation; and (2) a plaintiff must not have interests antagonistic to those of the class. *Wood v. Capital One Auto Fin., Inc.*, No. 06-CV-7, 2006 U.S. Dist. LEXIS 67513, at *8 (E.D. Wis. Sep. 19, 2006); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1080-81 (7th Cir. 2013). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions. Class Counsel devoted substantial time and resources to vigorous litigation of the Action. Kaufman Decl. ¶¶ 8-9 and Exhibit 1 thereto.

Rule 23(b)(3) requires that "common issues of fact and law predominate in particular when adjudication of questions of liability common to the class will achieve economies of time and expense." *Chi. Teachers Union, Loc. No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 444 (7th Cir. 2015). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

Based on the foregoing, the Settlement is fair, adequate and reasonable.

## V.    APPLICATION FOR SERVICE AWARD

Pursuant to the Settlement, Class Counsel respectfully request, and Defendant does not oppose, a Service Award for the Class Representative in the amount of $5,000.00. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

The relevant factors include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g.*, *id*. These factors, as applied to this Action, demonstrate the reasonableness of the requested Service Award to Plaintiff. Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Action including submitting to interviews with Class Counsel, reviewing all material filings, including approving the Agreement, and locating and forwarding documents and information to Class Counsel.

The requested incentive payment is reasonable when considering the range of incentive payments often awarded in class actions. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 for class representative); *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, *11 (N.D. Ill. Aug. 26, 2013) (approving $15,000 per class representative); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412 (E.D. Wis. 2002) (approving $5,000 per class representative). The Service Award of $5,000.00 is less than 0.0055% of the Settlement Fund, a ratio that falls well below the range of what has been deemed to be reasonable. *See, e.g.*, *Enter. Energy Corp. v. Columbia Gas Transmission*, 137 F.R.D. 240, 251 (S.D. Ohio 1991)

13

(approving service awards totaling $300,000, or 0.56% of a $56.6 million settlement). The Service Award requested here is reasonable.

## VI.    APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Rule 23 provides that "[i]n a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). This is a "common fund" case, meaning that because the defendant is paying a specific sum in exchange for release of liability to all Settlement Class Members, equitable principles permit the Court to "determine[ ] the amount of attorney's fees that plaintiffs' counsel may recover" from the fund "based on the notion that not one plaintiff, but all those who have benefitted from litigation should share its costs." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 563 (7th Cir. 1994) (internal citation and quotation marks omitted). When determining whether a requested fee award is reasonable, a court "must balance the competing goals of fairly compensating attorneys for their services rendered on behalf of the class and of protecting the interests of the class members in the fund." *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988).

In common fund cases in the Seventh Circuit, district courts can choose either a percentage approach or the lodestar method for calculating fees.  *See, e.g., Americana Art China Co. v. Foxfire Printing and Packaging*, 743 F.3d 243, 247 (7th Cir. 2014). The goal is for the court to "approximate the market rate between willing buyers and willing sellers that would have prevailed had the parties negotiated the rate at the outset of the representation." *Amadeck v. Cap. One Fin. Corp. (In re Cap. One Tel. Consumer Prot. Act Litig.)*, 80 F. Supp. 3d 781, 794-95 (N.D. Ill. 2015) (concluding "arm's length negotiation . . . would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions"). The Seventh Circuit requires district courts "to do their best to award

counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) (internal citation omitted). This market rate is calculated based on (1) the risk of nonpayment a firm agrees to bear, (2) the quality of its performance, (3) the amount of work necessary to resolve the litigation, and (4) the stakes of the case." *Farnham v. Caribou Coffee Co.*, No. 16-cv-295-wmc, 2017 U.S. Dist. LEXIS 214929, at *30-31 (W.D. Wis. Dec. 15, 2017) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 721 (7th Cir. 2001)).

Plaintiff respectfully requests the Court award Class Counsel $300,000 in attorneys' fees – an amount equal to one third of the $900,000 Settlement Fund created through their efforts – and costs of $675.98. Defendants do not oppose this request. Settlement Class Counsel and Defendants negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of this Settlement. This request fits squarely within the range of market rates for attorneys' fees in TCPA class action settlements, particularly given the significant risk of non-payment to Class Counsel at the outset and the quality of Class Counsel's representation. Class Counsel believes that they have litigated this matter efficiently and effectively on behalf of Plaintiff and all members of the Settlement Class, and Class Counsel will continue to do so until the final resolution and conclusion of this matter.

### a. The Court Should Use the Percentage of the Fund Method to Calculate an Appropriate Attorneys' Fees Award

In "choosing between the percentage and lodestar approaches," district courts of the Seventh Circuit "look to the calculation method most commonly used in the marketplace at the time such a negotiation would have occurred." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483 at 500-01 (N.D. Ill. 2015) (internal citation omitted); *see also McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 814-15 (E.D. Wis. 2009). "When the prevailing method of

15

compensating lawyers for similar services is the contingent fee, then the contingent fee is the 'market rate.'" *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 2006). Because Class Counsel were retained in this case on a contingency fee basis, the Court should calculate a fee award in this case based on a percentage-of-the-fund method.

Generally, one-third (33.33%) of a common fund is an appropriate attorneys' fee award in TCPA class action settlements for which counsel were engaged on a contingency basis. *See, e.g., Farnham v. Caribou Coffee Co*., No. 16-cv-295-wmc, 2017 U.S. Dist. LEXIS 214929, at *37 (W.D. Wis. Dec. 15, 2017) (awarding one third of fund in attorneys' fees in a common fund TCPA class settlement); *In re Cap. One Tel. Consumer Prot. Act Litig.)*, 80 F. Supp. 3d 781, 799 (finding based on the consideration of empirical data regarding fee awards in 72 TCPA class action settlements that the median fee award for settlements totaling $1.1 million and under is one third of the settlement fund).

### i.   Risk of Non-Payment and Stakes of Case

The Court may then consider whether "the risk that class counsel assumed by undertaking class representation" warrants adding a risk premium to the market rate for the fee. *Kolinek*, 311 F.R.D. at 502. The risk factor "is intended to help courts estimate the results of a hypothetical *ex ante* negotiation." *Id.* ("Risk is necessarily a factor in determining the price class counsel would have charged in arm's length *ex ante* negotiations.") (citing *Synthroid* , 264 F.3d at 721 (explaining that "if the market-determined fee for a sure winner were $1 million the market-determined fee for handling a similar suit with only a 50 percent chance of a favorable outcome should be $2 million")).

Here, Class Counsel faced a substantial risk of nonpayment at the outset of litigation. Indeed, Class Counsel risked out-of-pocket losses for time and costs associated with this action.

The risks faced by Class Counsel included the possibility that individualized issues would preclude class certification, that the shifting FCC and court interpretation and rulemaking relating to autodialers could absolve Defendants of liability, and the potential evidentiary hurdles due to Defendants' potential loss of relevant data. Accordingly, the Court should find that an attorneys' fee award of one third fairly and accurately reflects the risk of non-payment and reflects market rate for this case.

### ii. Quality of Representation and Work Necessary to Resolve Case

The quality of Class Counsel's representation in this case supports an award of one third of the Settlement Fund. Plaintiff and the Settlement Class benefited from the high caliber representation of Class Counsel, including Class Counsel's extensive TCPA class action experience. Kaufman Decl. at ¶ 8 and Exhibit 1 thereto, and Declaration of Stefan Coleman, attached hereto as Exhibit D, and Exhibit 1 thereto.

Class Counsel's analysis of the issues in this action, litigation strategy and diligence in pushing this action also support the requested award. Class Counsel vigorously litigated this matter. Class Counsel performed a thorough pre-suit investigation of the claims, prepared a highly detailed complaint and amended complaint, analyzed Defendants' motion to dismiss and engaged in extensive meet and confers with opposing counsel resulting in Defendants' withdrawal of the motion to dismiss, analyzed and participated in a case management conference with opposing counsel and hearing before the court, engaged in extensive discovery from Defendants, conducted significant formal and informal third party discovery, engaged in extensive informal settlement discussions, and prepared the motion for preliminary approval and the instant motion, with supporting materials. Kaufman Decl. at ¶ 9. Class Counsel's work was

17

necessary to resolve this action and achieved an excellent result for Plaintiff and the Settlement Class.

   **b.  Lodestar Cross-Check**

A lodestar analysis similarly supports the award of Class Counsel's fees and costs.

As previously discussed, the fee to Class Counsel in this case should be computed using the percentage of the fund method, not the lodestar method, because no consumer would hire counsel on an hourly basis to prosecute such relatively modest individual claims as those at issue in this case. And in such a case, "no Seventh Circuit case law suggests that a percentage-of-the-fund approach will yield a reasonable result only where it satisfies a lodestar cross-check." *Kolinek*, 311 F.R.D. at 500 (awarding fees to class counsel in amount of 36% of common fund in TCPA class action settlement without performing lodestar cross-check).  In any event, to the extent the Court finds it necessary to perform a lodestar cross check in this case, or even to use Class Counsel's lodestar to determine an appropriate fee, the significant time and resources Class Counsel invested supports an award of the requested one-third of the $900,000 Settlement Fund.

Class Counsel together have devoted 354.25 hours to this litigation.  Kaufman Decl. at ¶ 10; Coleman Decl. at ¶ 3.  The costs incurred by Class Counsel totaled $675.98, which were reasonable and necessary to the effective litigation of this case.  Kaufman Decl. at ¶ 11. These fees and costs were incurred over the course of a thorough pre-suit investigation, active litigation and discovery efforts prior to the Court's preliminary approval of settlement, and oversight of the settlement administration to date.

The time expended by Class Counsel on this litigation is reasonable.   Among Class Counsel's work on this matter, Class Counsel performed a thorough pre-suit investigation of the claims, prepared a highly detailed complaint and amended complaint, analyzed Defendants'

18

motion to dismiss and engaged in extensive meet and confers regarding the motion directed towards the Amended Complaint, resulting in the withdrawal of the motion to dismiss, prepared for and participated in a case management conference with opposing counsel and then a hearing before the Court, prepared and served written discovery and reviewed multiple document products, conducted extensive legal research and analysis regarding the legal issues in this action, including arguments related to document retention and spoliation, significant analysis of the facts and legal issues specific to this case, conducted significant formal and informal third party discovery, engaged in extensive informal settlement discussions, oversight of settlement administration (which is ongoing), and prepared the motion for preliminary approval and the instant motion, with supporting materials. Kaufman Decl. at ¶ 9.

The hourly rates of Class Counsel are also reasonable. Mr. Kaufman's hourly rate is $550 and Mr. Coleman's is $500. (Kaufman Decl. ¶ 12; Coleman Decl. ¶ 3) *See Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003) (finding the attorney's actual billing rate for comparable work to be presumptively appropriate). As reflected by Mr. Kaufman's and Mr. Coleman's declarations, the fees and costs incurred by Class Counsel in this case were reasonable and necessary to the successful prosecution of this case on behalf of the Class. *See generally* Kaufman Decl. and Coleman Decl. Moreover, Class Counsel also reasonably incurred $675.98 in out-of-pocket litigation costs for the benefit of the Class. *Id*.

Calculating the base lodestar and bill of costs, however, is not the end of the inquiry when performing a lodestar cross-check, because the court must still determine an appropriate lodestar multiplier to assign as a premium for the services provided. *See, e.g., Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975-76 (7th Cir. 1991) (remanding case for recalculation of attorneys' fees because the trial court failed to award a risk multiplier). As when determining the

proper percentage of the common fund to award, addressed above, the risk of non-payment Class Counsel assumed at the time the case was initiated must be considered in determining the proper multiplier, *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011), as must "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation," *Gastineau*, 592 F.3d at 748; *see also* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986) (explaining it is established practice to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases). As discussed above, Class Counsel faced a significant risk of nonpayment at the outset of this litigation.

A fee award representing roughly 5 times the base lodestar is "within the bounds of reason" in the Seventh Circuit in a common fund settlement such as this, *see, e.g., Johnson*, 2015 WL 13546111, at *6 (citing *Williams v. Rohm & Haas Pension Plan*, No. 04-0078-SEB, 2010 WL 4723725 (S.D. Ind. Nov. 12, 2010), *aff'd*, 658 F.3d 629 (7th Cir. 2011)) (noting parenthetically that the court in *Williams* awarded fees of $43.5 million, representing 5.85 multiplier). Here, the requested award equates to approximately 1.598 times the base lodestar of $187,787.50 by itself. This multiplier is well "within the bounds of reason" especially in consideration of the significant risks faced by Class Counsel in undertaking this representation.

Given the strong results for the Settlement Class and the substantial work done by Class Counsel to litigate this case, a fee award of $300,000 and reimbursement of expenses totaling $675.98 is justified and appropriate.

## VII.   <u>CONCLUSION</u>

The Settlement securing $900,000 in cash for the benefit of the Settlement Class represents an excellent result given the obstacles confronted in this Action. The Settlement more

than satisfies the fairness and reasonableness standard of Rule 23(e), as well as the class certification requirements of Rules 23(a) and (b)(3). Further, Class Counsel's request for a Service Award for the Class Representative and the application for attorneys' fees and expenses is reasonable under all the circumstances. The fee request satisfies the market rate factors given the results achieved, the notable litigation risks, the complicated nature of the factual and legal issues, and the time, effort and skill required to litigate claims of this nature to a satisfactory conclusion.

Accordingly, Plaintiff and Class Counsel respectfully request that this Court (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint as Class Representative the Plaintiff, as listed in paragraph 16 of the Agreement; (4) appoint as Class Counsel the undersigned law firms and attorneys, as listed in paragraph 14 of the Agreement; (5) approve the requested Service Award for the Class Representative; (6) award Class Counsel attorneys' fees and expenses; and (7) enter Final Judgment.

Respectfully submitted,

Dated: August 19, 2019      By: */s/ Avi R. Kaufman*
                                       Avi R. Kaufman
                                       kaufman@kaufmanpa.com
                                       KAUFMAN P.A.
                                       400 NW 26th Street
                                       Miami, FL 33127
                                       Telephone: (305) 469-5881

                                       Stefan Coleman
                                       law@stefancoleman.com
                                       LAW OFFICES OF STEFAN COLEMAN, P.A.
                                       201 S. Biscayne Blvd, 28th Floor
                                       Miami, Fl 33131
                                       Telephone: (877) 333-9427
                                       Facsimile: (888) 498-8946

                                       *Counsel for Plaintiff and all others similarly situated*

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 19, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

_/s/Avi R. Kaufman_